## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE HENDERSON,** | : | **Civil No.  1:19-CV-811** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner of Social Security, Andrew Saul, is automatically substituted as the defendant in place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Rose Henderson applied for disability insurance benefits under Title II of the Social Security Act on April 19, 2015, alleging disability due to fibromyalgia, hypothyroidism, obesity, and depressive disorder, among other impairments. (Tr. 309). However, after a consideration of the medical records and opinion evidence, which generally showed that Henderson's pain was being managed with medication and that her mental health issues were being treated with medication and outpatient therapy, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Henderson could perform a range of sedentary work with limitations and denied her disability application.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

On April 29, 2015, Rose Henderson applied for disability and disability insurance benefits, alleging an onset date of disability beginning February 10, 2013

due to migraine headaches, fibromyalgia, arthralgia, depressive disorder, hypothyroidism, obesity, vitamin D deficiency, and pes planus. (Tr. 87-88). Henderson was approximately 46 years old at the time of the alleged onset of her disability and had prior employment as a laborer, which was medium unskilled work. (Tr. 35). She had a high school education and could communicate in English. (Id.).

Henderson treated at Cumberland Valley Counseling Associates from June 2012 to June 2015 for her depression and anxiety. (Tr. 555-633). In March of 2013, she was diagnosed with major depressive disorder, severe without psychotic features. (Tr. 564). Henderson continued to treat at Cumberland Valley Counseling with weekly outpatient counseling sessions throughout 2013 and 2014, and monthly sessions beginning in January 2015 to June 2015. (Tr. 555-633). At a February 2014 assessment, it was noted that Henderson had depression and anxiety and was stressed about her sons' personal situations, but she reported a clear thought process, non-psychotic thought content and normal range of affect. (Tr. 602-03). In September, Gene Galbraith, M.A. reported that Henderson was "doing better" and had "no complaints," and recommended that she exercise. (Tr. 620). Galbraith consistently reported that Henderson had made good progress most weeks from session to session, rating her progress at a 7 or 8 out of 10 from week to week. (Tr. 615, 619, 622, 626, 628-29).

Henderson also treated at Leedy Abbey Counseling services from January 2013 through May 2015 for her major depressive disorder. (Tr. 436-61). In January 2013, it was noted that Henderson had depressed mood and a blunted affect, but that her memory was intact and she had coherent thought processes. (Tr. 460). Treatment notes also noted that Henderson was compliant with her medications and was not experiencing any medication side effects. (Tr. 443, 445, 447, 449, 453). In December 2014, Henderson was observed as having a depressed mood but normal affect and calm behaviors. (Tr. 442). Her memory was intact and she had coherent thought processes. (Id.)

Henderson also treated at Pinnacle Health Family Care for depression, fibromyalgia, migraines, osteoarthritis and knee pain. (Tr. 462-512). In April 2013, Dr. Fowler noted that Henderson's fibromyalgia pain was aggravated by lifting and movement but was relieved by pain medications. (Tr. 498). It was reported that Henderson's depression was worsening at this time, and that she had difficulty concentrating and falling asleep, as well as fatigue and excess worry. (Id.) Henderson continued to treat with Dr. Fowler for her depression and saw Dr. Wilson for her fibromyalgia, knee pain, and foot pain. In March of 2015, it was noted that her symptoms of depression were worsening and that her depression was associated with her chronic pain. (Tr. 468). It was also noted that her left knee pain was worsening at this time and was aggravated by climbing stairs but was relieved by

pain medications. (Id.) In January 2016, Henderson was seen at the Stevens Center for a psychiatric evaluation, in which it was noted that she had a depressed mood, normal thought content, and good insight and judgment. (Tr. 668). The treatment plan indicated that Henderson was to continue psychotherapy and continue her medications. (Tr. 669).

From December 2015 to March 2017, Henderson was seen at Geisinger Family Medicine for her fibromyalgia, osteoarthritis, and migraines. (Tr. 777-917). Treatment notes from a December 8, 2015 visit noted that her depression and anxiety were controlled on medications and that Henderson was seeing a psychiatrist. (Tr. 777). In March 2016, Henderson reported feeling depressed "once in a while" and denied fatigue, lack of energy, and insomnia. (Tr. 812). It was noted that she had a normal mood and normal affect. (Tr. 815). At a follow up visit in April 2017, Henderson again stated that she felt depressed "once in a while" but reported that her medicine was working well for her. (Tr. 864).

It is against this clinical backdrop that a hearing was held on this disability application on April 10, 2017, where Henderson appeared and testified, and a Vocational Expert also testified. (Tr. 45-75). A supplemental hearing was then held on January 12, 2018. (Tr. 76-86). Following these hearings, the ALJ issued a decision denying this application for benefits, finding that Henderson remained

capable of performing a range of sedentary jobs in the national economy in the representative occupations of a final assembler and dowel inspector. (Tr. 36).

In that decision, the ALJ first concluded the Henderson had met the insured status requirements of the Social Security Act from the date of her onset of disability through December 31, 2018 and had not engaged in any substantial gainful activity since her alleged onset date of disability on February 12, 2015. (Tr. 26). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Henderson suffered from the following severe impairments: generalized osteoarthritis, fibromyalgia, migraine without aura and without status migrainosus, post-traumatic stress disorder, and major depressive disorder. (Tr. 28). The ALJ also carefully considered a number of other medical conditions, but the ALJ ultimately concluded that these impairments did not limit Henderson's ability to perform sustained work tasks more than minimally, and thus found these impairments to be non-severe. (Id.). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 28-30).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Henderson's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except limited to simple, routine, repetitive tasks, involving 1-2 step instructions and occasional changes in the work setting. The claimant can lift less than 10 pounds frequently and can

occasionally (defined as up to 1/3 of the workday) climb ramps and stairs. She can never climb ladders, ropes or scaffolds and can never crouch. The claimant can occasionally balance, stoop, kneel and crawl and cannot have exposure to hazards (i.e. unprotected heights or moving machinery).

(Tr. 30).

In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case. (Tr. 30-35). On this score, the ALJ gave significant weight to the opinion of Dr. Michael Brown, the state agency consultant, who opined that Henderson was capable of performing a range of sedentary activity, except that Henderson could lift less than 10 pounds frequently with occasional postural activity. (Tr. 32). The ALJ reasoned that Dr. Brown's July 2015 opinion was consistent with the medical evidence that showed an abnormal gait and lower left extremity weakness, and records indicated that Henderson was limited in her postural activity. (Tr. 32-33).

The ALJ afforded partial weight to Dr. Boatwright, who performed an internal medicine examination in June of 2015. (Tr. 33). The ALJ noted that Dr. Boatwright's examination was partially consistent with Dr. Brown's findings in that Henderson was limited in her ability to lift and in her postural movements, but that there was no evidence Henderson was able to sit for 4 hours per day as Dr. Boatwright had opined.

The ALJ also considered the opinion of Dr. Wilson, Henderson's treating provider. (Tr. 33). Dr. Wilson opined that Henderson could perform occasional

lifting and carrying of up to 20 pounds, could stand and/or walk for 1 hour of an 8-hour workday, and could sit for 6 hours of an 8-hour workday. (Id.) Dr. Wilson also opined that Henderson could occasionally use her hands and feet and could occasionally perform most postural activities. (Id.) The ALJ afforded Dr. Wilson's opinion only partial weight, as the ALJ found that Dr. Wilson's opinion was consistent with a light work RFC and that Henderson was more limited and better suited for sedentary work, due to her use of a cane and moderate osteoarthritis in her left knee. (Id.)

As for Henderson's mental impairments, the ALJ gave great weight to the July 2015 opinion of Dr. Banks, the state agency consultant. (Id.) Dr. Banks opined Henderson had a moderate limitation in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration, make simple work-related decisions, and response to changes in the workplace. (Id.) The ALJ reasoned that Dr. Banks' opinion was consistent with Henderson's history of conservative outpatient treatment and was supported by the findings of normal mental status examinations. (Id.)

The ALJ also considered the opinion of CRNP Sandra Abbey and afforded her opinion little weight. (Tr. 33-34). Abbey opined that Henderson would only have the ability to sustain an ordinary routine without special supervision and ask simple questions or request assistance. (Tr. 33). The ALJ reasoned that Abbey's opinion

was not supported by the lack of psychiatric admission and ability to manage her symptoms with conservative mental health treatment. (Tr. 33-34). Specifically, the ALJ pointed to Abbey's opinion that Henderson had no useful ability to function in the bulk of areas needed to perform unskilled work, even though Henderson generally showed intact cognitive functioning, concentration, and memory. (Tr. 34).

The ALJ considered the opinion of Gene Galbraith, M.A., a therapist who opined that Henderson could not meet the competitive standards to do unskilled work, and that she had limited to seriously limited abilities in the ability to understand, remember and carry out simple instructions, ask simple questions, and interact appropriately with the general public. (Tr. 34). The ALJ first noted that Galbraith was not an acceptable medical source. (Id.) Further, the ALJ reasoned that this opinion was not consistent with the largely conservative mental health treatment that Henderson had undergone and the largely normal findings on psychiatric examination. (Id.)

Finally, the ALJ considered Henderson's subjective statements concerning her impairments. Henderson alleged that she suffered from severe migraines, fibromyalgia pain, and depressive disorder, among other impairments. (Tr. 31). She reported using a cane to help her walk, and that she did not do household chores or prepare meals. (Id.) She stated that she had difficulty handling stress and changes in routine, and that she required reminders from her husband to take her medications.

(Id.) She reported being able to go out alone, drive, and shop, and that she could handle a savings account (Id.) She also stated that she continued to experience pain despite taking her pain medications. (Id.) On this score, the ALJ found that her statements were not entirely consistent with the medical evidence in the record. The ALJ noted that an x-ray of the left knee in May 2015 showed only moderate changes of osteoarthritis, and that a June 2015 brain MRI showed no evidence of intracranial abnormality or abnormal enhancement. (Id.) The ALJ reasoned that despite the alleged severity of her symptoms, Henderson would be able to perform a range of sedentary work. (Id.) It was noted that her pain improved with medications, and that she did not require surgical intervention for her knee pain. (Id.) In addition, concerning her mental impairments, the ALJ reasoned that Henderson had generally treated her impairments with medication and conservative outpatient therapy. (Tr. 32). The ALJ further noted that Henderson never required inpatient psychiatric intervention or any other significant treatment, and that she generally showed intact attention, concentration and memory and fair insight and judgment. (Id.)

Having arrived at this RFC assessment based upon an evaluation of these clinical records, medical opinions, and the claimant's statements, the ALJ found at Step 4 that Henderson could not perform her past work. (Tr. 35). However, at Step 5, the ALJ found that there were a number of sedentary jobs in the national economy that she could perform, such as a final assembler and dowel inspector. (Tr. 36).

Accordingly, the ALJ concluded that Henderson did not meet the stringent standard for disability set by the Social Security Act and denied her disability claim. (Tr. 37).

This appeal followed. (Doc. 1). On appeal, Henderson contends the ALJ erred in the RFC determination that Henderson could perform a limited range of sedentary work and did not account for Henderson's mental limitations. Henderson also contends that the ALJ erred in evaluating her subjective complaints concerning her symptoms. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation

demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C.

§1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  <u>Burnett v. Comm'r</u>

15

of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by

substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u>

<u>Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar.

29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No.

3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>,

No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and</u>

<u>recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27,

2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her from

engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064.  Once

this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to

show that jobs exist in significant number in the national economy that the claimant

could perform that are consistent with the claimant's age, education, work

experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at

1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F.3d 429, 433 (3d Cir. 1999).

## C.   **Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL

374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When

evaluating lay testimony regarding a claimant's reported degree of disability, we are

reminded that:

> [T]he ALJ must necessarily make certain credibility determinations,
> and this Court defers to the ALJ's assessment of credibility. See Diaz v.
> Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether
> there is substantial evidence to support an administrative law judge's
> decision, we owe deference to his evaluation of the evidence [and]
> assessment of the credibility of witnesses...."). However, the ALJ must
> specifically identify and explain what evidence he found not credible
> and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d
> Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare,
> 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d
> 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide
> "specific reasons for rejecting lay testimony"). An ALJ cannot reject
> evidence for an incorrect or unsupported reason. Ray v. Astrue, 649
> F.Supp.2d 391, 402 (E.D.Pa. 2009) (quoting Mason v. Shalala, 994
> F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it
> is supported by competent medical evidence. Dobrowolsky v. Califano,
> 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc.
> Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a
> claimant's subjective testimony that is not found credible so long as
> there is an explanation for the rejection of the testimony. Social
> Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social
> Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that
> there is an underlying medically determinable physical or mental
> impairment that could reasonably be expected to produce the
> individual's pain or other symptoms, however, the severity of which is
> not substantiated by objective medical evidence, the ALJ must make a
> finding on the credibility of the individual's statements based on a
> consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective

reports of pain under a standard of review which is deferential with respect to the

ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ

so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social

Security Rulings and Regulations provide a framework under which the severity of

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529,

416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is

not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363

(3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or

other symptoms will not alone establish that you are disabled."). It is well-settled in

the Third Circuit that "[a]llegations of pain and other subjective symptoms must be

supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d

Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's

symptoms, the ALJ must follow a two-step process in which the ALJ resolves

whether a medically determinable impairment could be the cause of the symptoms

alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a

claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### D. The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood,

487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Henderson was not entirely disabled.

With respect to the RFC assessment, Henderson challenges the ALJ's finding that she could perform a limited range of sedentary work. Specifically, Henderson asserts that the ALJ did not adequately account for limitations caused by her mental impairments. Further, Henderson argues that the ALJ's reliance on a state agency consultative examiner was misplaced, as that psychological consultant did not have the benefit of reviewing Henderson's entire medical record. She contends that the ALJ should have ordered a medical expert to appear at the hearing or sent interrogatories to a medical expert after the hearing.

At the outset, we note that Henderson' argument on this score is broad and does not identify any specific ambiguities between the evidence of record and the ALJ's RFC concerning Henderson's mental impairments, nor does she identify which evidence in the record is not consistent with the state agency consultant's opinion on which the ALJ partially relied. Moreover, the Court of Appeals has made it clear that "the ALJ is not precluded from reach RFC determinations without outside medical review of each fact incorporated into the decision." Chandler v.

Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011). Rather, "[a]lthough reliance on State consultants' and treating physicians' opinions is common and ALJs are required to consider any existing state consultant reports, the regulations do not require ALJs to seek outside expert assistance." Id. (citing 20 C.F.R. §§ 404.1519, 404.1527(f), 404.1546(c), 404.1527(e); SSR 96-5p). Accordingly, we cannot conclude that the ALJ erred in giving significant weight to Dr. Banks' opinion simply because Dr. Banks did not have the opportunity to review the plaintiff's entire medical record. The record in this case indicates that the ALJ took all of the medical evidence and opinion evidence into consideration and fashioned an RFC that appropriately accounted for Henderson's mental impairments by limiting her to simple, routine, repetitive tasks, involving 1-2 step instructions and occasional changes in the work setting. Thus, we find the plaintiff's first argument to be without merit.

Henderson also argues that the ALJ erred in finding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence. Henderson contends that the ALJ did not consider the effectiveness and the side effects of her medications, the frequency and intensity of her pain, other pain relief treatment and functional restrictions. However, to the contrary, the ALJ discussed Henderson's subjective complaints and determined that they were inconsistent with the medical evidence. Henderson stated that her

impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and understand and follow instructions. On this score, the ALJ took these statements into account to the extent they were consistent with the medical record, as the RFC limited Henderson to simple, routine repetitive tasks with only 1-2 step instructions and occasional changes in work setting. Moreover, the RFC accounted for Henderson's physical limitations by limiting her to only occasional postural limitations.

The ALJ further reasoned that despite the alleged severity of her symptoms, Henderson would be able to perform a range of sedentary work. It was noted that her pain improved with medications, and that she did not require surgical intervention for her knee pain. In addition, concerning her mental impairments, the ALJ reasoned that Henderson had generally treated her impairments with medication and conservative outpatient therapy. The ALJ further noted that Henderson never required inpatient psychiatric intervention or any other significant treatment, and that she generally showed intact attention, concentration and memory and fair insight and judgment. The ALJ examined Henderson's treatment notes, which indicated that her depression and her pain was being managed by medications and outpatient therapy. In addition, although a June 2015 functional capacity evaluation suggested that Henderson could perform light work, the ALJ found that Henderson's use of a cane limited her to sedentary work rather than light work. Overall, the ALJ

28

determined that Henderson's subjective complaints concerning the severity of her pain and her impairments were inconsistent with the record as a whole. On this score, we find that the ALJ's opinion regarding the claimant's statements is supported by substantial evidence.

In this case, the ALJ was required to examine the medical evidence of record, coupled with Henderson's subjective complaints regarding her impairments, and was tasked with determining what range of work Henderson could perform, if any. Given Henderson's conservative treatment for her pain and her mental health impairments, and the fact that her pain and depression was being managed during the relevant time period, the ALJ found that Henderson could perform less than a full range of sedentary work. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence; that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Biestek, 139 S. Ct. at 1154, supported these determinations.

We further find that the ALJ's evaluation of the lay testimony complied with the requirements prescribed by the Commissioner's regulations and the law. At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual

determinations"); <u>see also</u> <u>Gonzalez v. Astrue</u>, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability

determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.  **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ <i>Martin C. Carlson</i>
Martin C. Carlson
United States Magistrate Judge

Submitted this 20th  day of May, 2020